USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/27/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GERARD NGUEDI,

                Plaintiff,

v.

THE CITY OF NEW YORK, BILL BRATTON, AND BRIAN CAULFIELD,

                Defendants.

No. 16-CV-4430 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Gerard Nguedi, proceeding *pro se*, brings this action, pursuant to 42 U.S.C. §§ 1981 and 1983, alleging excessive force, discrimination, and deliberately indifferent policies, as well as various claims arising under state law. Defendants the City of New York and Bill Bratton, collectively, and Defendant Brian Caulfield now move for summary judgment.[1] For the reasons set forth below, Defendants' motions are granted.

## FACTUAL BACKGROUND

The following facts, construed in the light most favorable to Plaintiff, are undisputed unless otherwise noted. *See, e.g., Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).[2]

---

[1] None of the individual police officers who allegedly committed the underlying constitutional violations have been served and they are thus not parties to the current motions.

[2] These facts are drawn from the parties' submissions in connection with Defendants' motions for summary judgment, including the Rule 56.1 Statements submitted by Defendants the City of New York and Bill Bratton ("City 56.1"), Defendant Caulfield ("Caul. 56.1"), and Plaintiff (Pl. 56.1"), as well as Plaintiff's Responses to Defendants' 56.1 Statements ("Pl. Resp. City" and "Pl. Resp. Caul."). Where facts in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and denied only by way of a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c)–(d). In light of Plaintiff's *pro se* status, the Court has also conducted an "assiduous review of the record" to determine whether there is an evidentiary basis for his assertions. *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000).

In December of 2015, Plaintiff was employed by the Federal Reserve Bank in New York. City 56.1 ¶ 1. On December 23, he arrived at work with a taser and pepper spray in his luggage. Pl. Resp. City 56.1 ¶ 6. Plaintiff informed members of the Federal Reserve law enforcement unit that he had these items and asked if he could keep them. Pl. Resp. City 56.1 ¶ 6. They told Plaintiff that the items were not permitted. Pl. Resp. City 56.1 ¶ 6. Plaintiff claims that former NYPD Commissioner Bratton then arrived and personally arrested him. Pl. Resp. City 56.1 ¶ 6. This incident is the subject of another lawsuit pending in this district but not before this Court. *See Nguedi v. The Fed. Reserve Bank of N.Y.*, No. 16-CV-636 (S.D.N.Y. filed Jan. 27, 2016).

Approximately two months later, on March 1, 2016, Plaintiff's sister, Sabine Nguedi, called emergency services shortly before 7:00 p.m. because Plaintiff was not answering her phone calls. Caul. 56.1 ¶ 15. Plaintiff was posting messages on social media that troubled his sister, which led her to believe that he might be suicidal. Caul. 56.1 ¶ 15. At approximately 7:00 p.m., NYPD officers arrived at Plaintiff's apartment building and requested entry to his apartment. Caul. 56.1 ¶ 16. The officers informed Hector Vega, the building's doorman, that Plaintiff's sister had called the police because he was schizophrenic and might be suicidal. Caul. 56.1 ¶ 16.

Vega called Defendant Caulfield, the building manager employed by Pan Am Equities, and advised him that police officers had requested entry to Plaintiff's apartment because his sister feared for his safety. Caul. 56.1 ¶ 17. Caulfield directed Vega to comply with the officers' requests. Caul. 56.1 ¶ 17. Vega retrieved a key from a safe in the superintendent's office and accompanied the officers to Plaintiff's unit. Caul. 56.1 ¶ 18.

Upon arriving at Plaintiff's apartment, Vega knocked on the door, identified himself, and informed Plaintiff that NYPD officers had come to check on him out of concern for his safety. Caul. 56.1 ¶ 19. Plaintiff refused to open the door. Caul. 56.1 ¶ 19. One of the officers then

knocked on Plaintiff's door, identified himself as a police officer, and informed Plaintiff that he and the other officers were there to check on him. Caul. 56.1 ¶ 20. The officer also told Plaintiff that his sister had placed a call to emergency services because she was concerned for his safety. Caul. 56.1 ¶ 20. Plaintiff again refused to open the door. Caul. 56.1 ¶ 20.[3] While Defendants claim that Plaintiff threatened to hurt himself if the officers entered his apartment, Caul. 56.1 ¶ 20, he asserts that he "politely responded that [he] was okay and [informed them] that he didn't need any assistance," Pl. Aff. ¶ 14, ECF No. 55-8. The officer advised Plaintiff that if he refused to open the door, they would be forced to break it in order to enter the apartment. Caul. 56.1 ¶ 20.

The officers then asked Vega to unlock the door. Caul. 56.1 ¶ 21. Vega complied, but the officers could not enter because Plaintiff had secured the door using a chain lock. Caul. 56.1 ¶ 21. Plaintiff also pushed his weight against the door. Caul. 56.1 ¶ 22. When Plaintiff briefly paused, one of the officers broke the chain lock with a baton and the officers entered. Caul. 56.1 ¶ 22.

Defendants assert that Plaintiff began screaming and acting violently and combatively. Caul. 56.1 ¶ 23. Plaintiff avers that he screamed because the officers "started beating me with their batons and fists." Pl. Aff. ¶ 23, ECF No. 55-8. He further claims that "Pan Am Equities staff was watching the entire time and trying to make any curious neighbors go away. No one assisted me." Pl. Aff. ¶ 33, ECF No. 55-8. Emergency medical technicians arrived and administered two

---

[3] In his Rule 56.1 statement, Plaintiff says that the officers did not inform him why they were there. Pl. 56.1 ¶ G. However, the evidence that he cites for this proposition includes his social media post from the evening in question, in which he stated that police were at his door because "somebody called them to help me." Ex. 2, ECF No. 54-3. Plaintiff does acknowledge in his statement of facts that when he called 911 while the officers were attempting to gain entry to his apartment, he was then informed that his sister had called the police out of concern for his well-being. But this occurred *after* his social media post. *Compare* Pl. Aff. ¶ 16 *with* ¶¶ 20–21, ECF No. 55-8. In his deposition, Plaintiff also testified that the officers informed him someone had called them when they knocked on his door, further contradicting his statement of facts. *See* Pl. Dep. 4:24–5:14, ECF No. 53-14. In his Rule 56.1 statement, Plaintiff further avers that his sister "never said [he] was a danger to himself or others," Pl. 56.1 ¶ K, which similarly conflicts with the evidence supplied by Plaintiff, namely the affidavit of his sister, Sabine Nguedi Aff. ¶ 4, ECF No. 54-5. The Court thus declines to credit these conclusory statements set forth by Plaintiff in his 56.1 statement. *See Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07-CV-8828 (ER), 2013 WL 3929630, at *1 n.2 (S.D.N.Y. July 30, 2013).

sedatives in order to subdue Plaintiff. Caul. 56.1 ¶ 23. At approximately 8:00 p.m., Plaintiff was placed on a gurney and transported to Bellevue Hospital. Caul. 56.1 ¶ 24.

## PROCEDURAL HISTORY

On June 13, 2016, Plaintiff filed a Complaint commencing this action, alleging violations of 42 U.S.C. §§ 1981 and 1983, as well as state law. ECF No. 2. On May 15, 2017, Plaintiff filed the operative Amended Complaint. ECF No. 27. After the parties completed discovery, Defendants filed the instant motions. ECF Nos. 47, 52.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 authorizes a court to grant summary judgment if the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is "genuinely in dispute" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citations omitted). In deciding such a motion, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod*, 653 F.3d at 164 (citation omitted).

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If it satisfies this burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue

of fact for trial." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (citation and alteration omitted). Furthermore, "it is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (per curiam) (citation and alteration omitted).

## DISCUSSION

### I. Section 1983 Claims Against the City of New York[4]

Plaintiff asserts all three of his 42 U.S.C. § 1983 claims against the City: excessive force, discrimination, and deliberately indifferent policies. The same flaw is fatal to each: the complete absence of any evidence tending to show the existence of a city custom or policy. Indeed, it is well-established that municipalities cannot be liable merely because they employ a tortfeasor. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). Instead, a government body may be liable for a violation of Section 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A claim for municipal liability under Section 1983 thus requires a plaintiff to "plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New*

---

[4] In his Amended Complaint, Plaintiff indicates that his second and third causes of action—alleging discrimination and failure to train or supervise, respectively—are brought pursuant to both Sections 1983 and 1981. *See* Am. Compl. at 18–19. Claims asserted against state actors and municipalities, however, cannot be brought under Section 1981 and accordingly those causes of action are dismissed against the City and Defendant Bill Bratton. *See Duplan v. City of New York*, 888 F.3d 612, 619–20 (2d Cir. 2018) ("[W]e now join the strong consensus of our sister Circuits in rejecting [plaintiff's] argument and reaffirming *Jett*'s ongoing viability."); *Collymore v. City of New York*, No. 16-CV-8270 (LTS), 2018 WL 3014093, at *5 (S.D.N.Y. June 14, 2018) ("However, when the defendant is a state actor, Section 1983 is the exclusive remedy for violations of rights guaranteed under Section 1981. Thus, claims against individual defendants in their official capacity or against the City, must be brought under Section 1983. To the extent the Individual Defendants are sued in their individual capacities, the claims involve official action taken under color of state law and thus are also properly considered under Section 1983." (citations and alterations omitted)), *appeal filed* (July 18, 2018).

5

*York*, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted); *accord Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012).

With respect to the existence of a policy or custom, at the very least a plaintiff must demonstrate facts "tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). A plaintiff may satisfy this burden by showing any one of the following: "(1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *Kaplan v. City of New York*, No. 14-CV-4945 (RJS), 2018 WL 2084955, at *8 (S.D.N.Y. Mar. 22, 2018) (citation omitted).

Even assuming, *arguendo*, that there exists a question of material fact as to whether Plaintiff suffered an underlying constitutional violation, the City has demonstrated that it is entitled to judgment as a matter of law. There is no indication whatsoever that any municipal employee acted pursuant to an official policy or custom, nor is there any indicia of widespread conduct or any other fact that could give rise to an inference of the existence of such a custom or policy. *See Fabian v. City of New York*, No. 16-CV-5296 (GHW), 2018 WL 2138619, at *6 (S.D.N.Y. May 9, 2018) (granting defendants summary judgment where "Plaintiffs present[ed] no evidence of a formal policy or a pattern or practice of excessive force and denial of medical care" by the NYPD); *Kaplan*, 2018 WL 2084955, at *8 (granting the city of New York summary judgment where

plaintiff failed to "put forth any evidence to create a dispute of material fact as to whether the allege deprivations of constitutional rights at issue were caused by an official policy or custom of the City of New York"); *Guzman v. United States*, No. 11-CV-5834 (JPO), 2013 WL 5018553, at *3 (S.D.N.Y. Sept. 13, 2013). A single incident on which Plaintiff's constitutional rights were purportedly violated is simply insufficient to give rise to an inference of the existence of a municipality custom or policy. *See DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." (citation omitted)); *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382–83 (S.D.N.Y. 2005).[5]

To the extent Plaintiff relies on the theory that the City failed to properly train or supervise officers, he similarly has not adduced a single piece of evidence in support of this theory, aside from the single instance alleged here in which he claims his rights were violated. *See Triano v.*

---

[5] Plaintiff also asserts in the Amended Complaint that certain officers stationed near his apartment complex honked their horns at him and would "look out" for him. Am. Compl. ¶ 30. This is insufficient, however, to establish that there existed a policy or custom which led to the alleged assault by officers on March 1, 2016. As noted previously, Plaintiff was also arrested on December 23, 2015. But that incident is the subject of a separate lawsuit not before this Court. Indeed, Plaintiff claims in his papers opposing summary judgment that this prior arrest is "irrelevant and not related" to the current suit, Pl. Opp. at 7, ECF No. 57, an assertion buttressed by his statement of facts, in which he avers that the instant action is "not about" the December 2015 arrest, "which is [instead] being litigated in another lawsuit," Pl. 56.1 ¶ C. In any event, to the extent Plaintiff does rely on the December 2015 arrest in the current action, it is unavailing. Another court in this district has already twice concluded that there existed sufficient probable cause to arrest Plaintiff on that occasion, *see Nguedi v. Fed. Reserve Bank of N.Y.*, No. 16-CV-636 (GHW), 2017 WL 2557263, at *6–7 (S.D.N.Y. June 12, 2017), *Nguedi v. Fed. Reserve Bank of N.Y*, No. 16-CV-636 (GHW), 2017 WL 5991757, at *12 (S.D.N.Y. Dec. 1, 2017), because he acknowledged, as he does here, that he approached police officers and informed them that he was carrying a taser that is illegal under New York law, *see* Pl. Aff. ¶ 5, ECF No. 54-8. Accordingly, Plaintiff is barred by collateral estoppel from asserting a false arrest claim based on that incident. *See United States v. U.S. Currency in the Amount of $119,984.00*, 304 F.3d 165, 172 (2d Cir. 2002). To the extent Plaintiff relies on this incident in further support of his claims of discrimination, excessive force, or failure to train, it is similarly unavailing. There are no allegations that the previous arrest involved excessive force. *See generally* Pl. Resp. City 56.1. Furthermore, that probable cause existed to arrest Plaintiff precludes that prior arrest from bolstering his current claim of discrimination. *See Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 469 (S.D.N.Y. 2008) (granting City summary judgment where "there was no violation of plaintiff's constitutional rights" by officer defendants); *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 409 (E.D.N.Y. 2011) (same); *Hardin v. Meridien Foods*, No. 98-CV-2268 (BSJ), 2001 WL 1150344, at *8 (S.D.N.Y. Sept. 27, 2001) ("Plaintiff claims that defendant officers harbored an intent to discriminate when they arrested plaintiff. However, the Court has found that there was, in fact, probable cause to arrest plaintiff based on evidence that was completely unrelated to plaintiff's race.").

*Town of Harrison*, 895 F. Supp. 2d 526, 531–32 (S.D.N.Y. 2012) (explaining that to prevail on a failure to train theory a plaintiff must show that it is "permanent and well settled" (collecting cases)).

Because Plaintiff fails to provide any evidence that gives rise to an inference of the existence of a custom or policy, the City is entitled to summary judgment.

## II. Section 1983 Claims Against Defendant Bill Bratton

Both of the Section 1983 claims asserted against Defendant Bratton—for excessive force and discrimination—also suffer from the same fatal flaw: his lack of personal involvement. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (citation omitted); *accord Ochoa v. Bratton*, No. 16-CV-2852 (JGK), 2017 WL 5900552, at *3 (S.D.N.Y. Nov. 28, 2017). The personal involvement of a supervisory defendant may also be shown in the following ways: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[6]

---

[6] The Court notes that it is an open question whether *Colon* remains good law following *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), which "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations." *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 7, 2017) (citation omitted); *accord Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012). "Some courts have simply concluded that, in the absence of Second Circuit precedent suggesting otherwise, they will continue to apply the *Colon* factors," *Allah*, 2017 WL 3972517, at *6, while others have found that certain of the factors are no longer valid, *see Hollins v. City of New York*, No. 10-CV-1650 (LGS), 2014 WL

8

There are simply no facts supporting the notion that Defendant Bratton was in any way personally involved in the events at hand. Plaintiff testified at his deposition that Defendant Bratton was not present on March 1, 2016, when officers conducted the wellness check, Pl. Dep. 131:18–19, ECF No. 53-13, and that his only interaction with Defendant Bratton occurred during the December 2015 arrest at the Federal Reserve, which, as previously noted, is instead the subject of a separate lawsuit, Pl. Dep. 131:20–22, ECF No. 53-13.[7] The only other reference to Defendant Bratton in the Amended Complaint is that he "is the police commissioner for the City of New York, with supervisory authority over all officers and operation of NYPD, including responsibility for training, recruiting, and managing all NYPD officers." Am. Compl. ¶ 3. But Plaintiff has failed to adduce any *facts* showing that Defendant Bratton was either personally involved or is otherwise personally liable under any of the *Colon* factors. His mere status as the supervisor of all NYPD officers, absent facts showing that he failed to remedy a wrong, created a custom or policy, was grossly negligent, or exhibited deliberate indifference, is simply insufficient. *See Burns v. Griffin*, No. 16-CV-782 (VB), 2018 WL 3059655, at *6–7 (S.D.N.Y. June 20, 2018) (granting supervisory defendant summary judgment because "the bare fact that a defendant occupies a high position in the New York prison hierarchy is insufficient to sustain a claim" (quoting *Colon*, 58 F.3d at 874) (alterations omitted)); *Corbett*, 2018 WL 919832, at *7 (granting supervisory defendant's motion to dismiss where there were "no factual allegations tying her to the constitutional violations at issue in this case"); *Bradshaw v. City of New York*, No.15-CV-4638 (ER), 2018 WL 818316, at *8

---

836950, at *13 (S.D.N.Y. Mar. 3, 2014). In light of the Circuit's continued reference to all of the *Colon* factors, the Court will consider all five. *See Shawn v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (summary order); *see also Corbett v. Annucci*, No. 16-CV-4492 (NSR), 2018 WL 919832, at *6 n.5 (Feb. 13, 2018). In any event, even if all of the avenues under *Colon* remain viable, Plaintiff cannot demonstrate a genuine dispute of material fact.

[7] As discussed above, Plaintiff previously filed a lawsuit alleging false arrest based on a December 23, 2015 incident, which was allegedly carried out personally by Defendant Bratton, who was then the Commissioner of the NYPD. For the reasons discussed at note 5, *supra*, this prior arrest is insufficient for Plaintiff's claims against Defendant Bratton to survive the summary judgment stage.

(S.D.N.Y. Feb. 9, 2018) (granting supervisory defendant summary judgment because "personal involvement on a supervisory basis requires that the defendant be faced with direct allegations that would permit an inference the Defendant had acted or failed to act in any of the ways that would subject her to personal liability" and although plaintiff had sent her letters detailing complaints related to his incarceration, there was no evidence that the defendant was informed of the purported unconstitutional strip search (citation omitted)); *Ochoa*, 2017 WL 5900552, at *3–4 ("plaintiff's conclusory allegations that, as the New York City Police Commissioner, Bratton was responsible for training and supervising the Task Force—and was therefore negligent for its misdeeds, if any— does not suffice to state a claim against Bratton").

### III. Section 1983 Claims Against Defendant Brian Caulfield[8]

With respect to Defendant Caulfield, he is entitled to summary judgment on both of the Section 1983 claims maintained against him—for excessive force and discrimination—due to his status as a private individual as opposed to state actor. In order to establish liability under Section 1983, a plaintiff must satisfy two elements: (1) that the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory or constitutional rights. *See Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d. Cir. 1998).

Ordinarily, a private party will only have acted under color of state law if "there is a sufficiently close nexus between the State and the challenged action of the [private party] so that the action of the latter may be treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). "A private actor may be considered to be acting under the color of state

---

[8] Plaintiff also appears to assert a Section 1981 claim against Defendant Caulfield for discrimination. Caulfield is not a state actor and accordingly Plaintiff may maintain a Section 1981 claim against him. *See Collymore*, 2018 WL 3014093, at *5. But to the extent Plaintiff asserts this claim, it obviously fails. First, from the Amended Complaint and the parties' moving papers it is not clear which activity within the scope of Section 1981 was the subject of the discrimination allegedly committed by Caulfield. *See* 42 U.S.C. § 1981(a). Second, there is not a single fact evincing any discriminatory intent on behalf of Caulfield. *See Jones v. Beth Israel Hosp.*, No. 17-CV-3445 (GHW), 2018 WL 1779344, at *6 (S.D.N.Y. Apr. 12, 2018).

10

law for purposes of Section 1983 if she was a willful participant in joint activity with the State or its agents or conspire[d] with a state official to violate the plaintiff's constitutional rights." *Carrillos v. Inc. Vill. of Hempstead*, 87 F. Supp. 3d 357, 371 (E.D.N.Y. 2015) (citations omitted). To establish a joint action claim, "a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff the rights guaranteed by federal law." *Moritz v. Town of Warwick*, No. 15-CV-5424 (NSR), 2017 WL 4785462, at *12 (S.D.N.Y. Oct. 19, 2017) (citation omitted). "The provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983." *Young v. Suffolk Cty*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010). To demonstrate a conspiracy, a plaintiff must prove: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002) (citation omitted).

Here, there are no facts showing either that Caulfield engaged in joint action or a conspiracy with the police officers who allegedly used excessive force against Plaintiff. The record is devoid of any evidence demonstrating that there was a pre-arranged agreement between Caulfield and the police officers to violate Plaintiff's constitutional rights. Indeed, Plaintiff's sister called 911 to express concern for his safety, which, the police indicated, was the basis of their request for assistance from the employees of Pan Am Equities. This was the motivation for Caulfield to instruct Vega, the building's doorman, to assist the officers. Similarly, during the period that Plaintiff alleges he was assaulted, he acknowledges that the "Pan Am Equities employees" simply

11

stood by and failed to assist him. On this record, there is simply no dispute that Caulfield was not a state actor.

Indeed, courts in this circuit have consistently rejected the argument now advanced by Plaintiff, including one instance in which the facts were nearly identical to those here. In *Roffman v. Knickerbocker Plaza Associates*, the plaintiff maintained a Section 1983 claim against the owners, managers, and employees of the apartment building where she lived. No. 04-CV-3885 (PKC), 2008 WL 919613, at *4 (S.D.N.Y. Mar. 31, 2008). Even though the defendants assisted in the unauthorized entry to the plaintiff's apartment by emergency medical personnel who were concerned for her safety, the court soundly rejected the notion that the private actors had conspired or entered into joint action with the state, thereby rendering them liable under the statute. *Id.* at *9–10; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (plaintiff entitled to relief under Section 1983 against private party only if she could prove that private party and police officer "reached an understanding" to deny her service or cause her unlawful arrest); *Shapiro v. City of Glen Cove*, 236 F. App'x 645, 647 (2d Cir. 2007) (summary order) (declining to hold that private actor acted under color of state law when "ample evidence show[ed] that the officials who searched [plaintiff's] house exercised independent judgment rather than acting at [private actor's] direction); *Moritz*, 2017 WL 4785462, at *11–12 (granting motion to dismiss because allegations were insufficient to establish that private actor acted under color of state law, either under a conspiracy or joint action theory, even though there was a "friendship" between private and state actors, which included regular communication); *Bishop v. Best Buy, Co.*, 08-CV-8427 (LBS), 2011 WL 4011449, at *14 (S.D.N.Y. Sept. 8, 2011) (conspiracy claim not established on summary judgment where there is "no evidence in the record that the defendant was involved in a conspiracy, preconceived plan, mutual understanding or concerted action with" state actor) (alterations

omitted); *Porter-McWilliams v. Anderson*, No. 07-CV-0407 (KMK) (LMS), 2007 WL 4276801, at *7 (S.D.N.Y. 2007) (no joint action found where the plaintiff alleged only that the defendants provided detective and court with information but alleged no facts suggesting that the detective was influenced in choice of procedure or was under control of the defendant when he filed a criminal charge against the plaintiff), *report and recommendation adopted* (Dec. 3, 2007).[9]

## IV. State Law Claims

Plaintiff also brings causes of action for intentional infliction of emotional distress, false arrest, and assault. The Court declines to exercise supplemental jurisdiction over these remaining claims.

Federal district courts have supplemental jurisdiction over non-federal law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may, at its discretion "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). As a general rule, "if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well." *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (citation omitted). Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *Cohill*, 484 U.S. at 350 n.7). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims.

---

[9] To the extent Plaintiff maintains any claims against Pan Am Equities, it is entitled to summary judgment for substantially the same reasons as those discussed with respect to the City. *See Tchatat v. City of New York*, No. 14-CV-2385 (LGS), 2015 WL 5091197, at *9 (S.D.N.Y. Aug. 28, 2015) ("Neither private employers nor municipalities are liable under § 1983 on a theory of *respondeat superior* for the constitutional torts of their employees. In order to state a claim, the plaintiff must prove that 'action pursuant to official policy of some nature caused a constitutional tort.'" (quoting *Monell v. Dep't of Social Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978))).

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are granted. The Court has been mindful of Plaintiff's *pro se* status, but nonetheless finds that no genuine dispute of material fact exists. Because the individual police officers were never served with the Amended Complaint, the claims against them are dismissed without prejudice. *See* Fed. R. Civ. P. 4(m). The Clerk of Court is respectfully directed to enter judgment in favor of defendants; terminate the motions pending at docket entries forty-seven, fifty-two, and fifty-three; close the case; and mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated: September 27, 2018
       New York, New York

Ronnie Abrams
United States District Judge